## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **20-03439-jw**

## ORDER DENYING CONFIRMATION AND PERMITTING TIME TO FILE A MODIFIED PLAN

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/19/2021**



US Bankruptcy Judge
District of South Carolina

Entered: 02/19/2021

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 20-03439-JW |
| | Chapter 13 |
| Patricia A Simmons, | **ORDER DENYING CONFIRMATION** |
| Debtor(s). | **AND PERMITTING TIME TO FILE A** |
| | **MODIFIED PLAN** |

This matter comes before the Court upon the confirmation of the proposed plan filed by

Patricia A. Simmons ("Debtor") on December 2, 2020 ("Plan"). Vanderbilt Mortgage and Finance,

Inc. as attorney-in-fact for the CIT Group/Sales Financing, Inc. ("Vanderbilt") filed an objection

to confirmation of the Plan, which disputed the amount of Debtor's valuation of Vanderbilt's

secured claim under 11 U.S.C. § 506(a). After an unsuccessful mediation, the Court held a

contested hearing, and the matter was taken under advisement. This Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C.

§ 157. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R.

Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of

law.[1]

**FINDINGS OF FACT**

1.      On May 23, 2003, Debtor and Marcus Simmons purchased a 2000 Schult

Manufactured Home (VIN# HOGA17H08581A\B) ("Manufactured Home") for $41,900.00,

which was placed at 77 Chapel Road in Yemassee, South Carolina and serves as Debtor's

residence. To purchase the Manufactured Home, Debtor and Marcus Simmons executed a retail

installment contract with CIT Group/Sales Financing, Inc. ("CIT Group"), which provided that

Debtor would make monthly payments for 25 years with interest at a rate of 6.75%. Under the

---

[1]      To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

terms of the contract, CIT Group retained a security interest in the Manufactured Home. It appears

Vanderbilt is now the servicer of the loan.

2.      In 2015, the Assessor for Jasper County, South Carolina assessed the value of the

Manufactured Home as $14,500 for tax purposes. The tax value has remained unchanged since

that assessment.

3.      On September 3, 2020, Debtor filed a petition for relief under chapter 13 of the

Bankruptcy Code. At the time of the petition, Debtor was current on her obligations on the loan to

Vanderbilt.[2]

4.      On September 15, 2020, Vanderbilt filed a proof of claim, indicating a total secured

claim in the amount of $28,774.83 with a $2,770.01 pre-petition arrearage. The pre-petition

arrearage is primarily comprised of unidentified advances and attorney's fees charged to the loan.

5.      On September 28, 2020, Debtor filed her schedules and statements. Under Schedule

A, Debtor listed the value of the Manufactured Home as $14,500, the tax value of the property.

Debtor's schedules also indicate that her monthly income is $1,747.00, which is limited to social

security disability benefits, supplemental nutrition assistance program benefits, and a contribution

from her adult son.

6.      Also on September 28, 2020, Debtor filed a proposed chapter 13 plan. The proposed

plan provided that Vanderbilt's secured claim would be valued pursuant to 11 U.S.C. § 506(d)

with a secured claim of $14,500, the tax value for the Manufactured Home, paid with 5.75%

interest. The remaining balance of Vanderbilt's claim would be treated as unsecured under the

plan.

---

[2]      It appears from Vanderbilt's proof of claim that Debtor had not made the September 2020 payment; however, under the terms of the retail installment contract, the September 2020 payment did not become late until September 15, 2020, twelve days after Debtor had filed her petition.

2

7.      On October 13, 2020, Vanderbilt filed an Objection to Confirmation of Plan, alleging that the amount of Debtor's valuation of the Manufactured Home is too low and the proposed plan is therefore not in compliance with 11 U.S.C. § 1325.

8.      Thereafter, the valuation dispute was sent to Court-appointed mediation, which did not result in a resolution of the matter.

9.      On December 2, 2020, Debtor filed the present Plan, which did not modify the prior treatment of Vanderbilt's claim.

10.     Due to the COVID-19 pandemic, the Court held a video hearing on the confirmation of the Plan, attended by Debtor, Debtor's Counsel and Counsel for Vanderbilt. At the hearing, Debtor testified as to the condition of the Manufactured Home and presented the testimony of William Cobia, a real estate appraiser located in Hilton Head Island, South Carolina. Mr. Cobia, who personally inspected the Manufactured Home, testified that its value was $17,000.00. Vanderbilt presented the testimony of Walter Banks, a manufacturing home appraiser, who also inspected the Manufactured Home. Mr Banks testified that the value of the Manufactured Home is $30,700.00. Both appraisers were certified as experts and their reports were submitted into evidence. In addition, Debtor presented into evidence a letter from the Jasper County Assessor indicating the current tax value of the Manufactured Home.

## CONCLUSIONS OF LAW

Vanderbilt does not dispute that Debtor is permitted to value its secured claim under 11 U.S.C. § 506 if the value of the Manufactured Home is less than the amount of Vanderbilt's claim. The sole dispute between the parties is the amount of the Manufactured Home's value.

Both parties had appraisers certified as experts testify and present their appraisals in support of each appraiser's respective value for the Manufactured Home. "Often multiple

appraisers provide conflicting valuations, and '[w]hen two appraisal reports conflict, a court must determine the value based on the credibility of the appraisers, the logic of their analys[es] and the persuasiveness of their subjective reasoning.'" *In re Blackwell*, C/A No. 2:17-bk-20203, 2018 WL 1189257, at *2 (Bankr. S.D. W.Va. Mar. 5, 2018) (quoting *In re 3G Props., LLC*, C/A No. 10-04763-8-JRL, 2011 WL 5902504, at *8 (Bankr. E.D.N.C. July 12, 2011)) (alterations in original). "However, it is important to note that a court need not wholly accept the value of one appraiser over another—it can arrive at its own conclusions as to value based on its own interpretation of the evidence." *Id.*

### A. Debtor's Appraiser

Debtor presented as her expert, Mr. Cobia. Mr. Cobia has 24 years of experience in appraising real estate and manufactured home in coastal South Carolina and Georgia. Mr. Cobia testified the value of the Manufactured Home was $17,000.00, which he based upon an inspection of the property, which he found to be in poor condition; an NADA report for a 2000 Schult manufactured home that indicated a retail value of $17,260.88; and the Jasper County Assessor record for the Manufactured home, which listed a value of $14,500. Attached to his appraisal report were a number of photographs demonstrating the poor condition of the Manufactured Home including a hole in the ceiling and other water damage, a broken kitchen faucet, and damage around the windows of the Manufactured Home. In addition to the water damage, Mr. Cobia indicated the HVAC in the property needs repairs as well.

Admittedly, Mr. Cobia indicated that his inspection was limited as Debtor lacked the funds necessary to complete a full appraisal of the property. This is a common occurrence in valuation disputes in chapter 13 cases. Valuations under 11 U.S.C. § 506 provide the debtor an opportunity to satisfy a secured claim through the term of a confirmed plan by making payments up to the

debtor's value of collateral that secures the claim. However, when the debtor's asserted value is

challenged, the debtor must provide evidence to support the valuation, which generally requires

the hiring of valuation experts, a difficult task for an already financially strained debtor, especially

as compared to the position of the objecting creditor, who routinely hires appraisers to testify at

such disputes.

Vanderbilt challenged Mr. Cobia's appraisal by asserting that he utilized a general NADA

report that was not specific to the model of the Manufactured Home and did not factor in the

additional components and accessories included in the Manufactured Home. Also, Vanderbilt

alleged that Mr. Cobia's appraisal utilized incorrect measurements for the Manufactured Home.

Specifically, Mr. Cobia added additional length to the Manufactured Home that resulted in

additional square footage being considered in his appraisal.[3]

Debtor also testified as to the condition of the Manufactured Home. Debtor indicated that

water damage occurred in the Manufactured Home as a result of several years of leaks in the

original roof. She testified that water was leaking into the walls and collecting under the

Manufactured Home, which has caused a hole in the ceiling and water damage to other portions

of the property. She also testified that she has observed mold on the windows and carpet, especially

in the summer and that she routinely has to clean it off of the surfaces. Both appraisers recognized

that there was a prior water leak occurred in the Manufactured Home but could not confirm

Debtor's assertions that there was a mold issue in the property as they did not observe it firsthand.

As a result of the severity of the leaking roof, Debtor used her disability income to replace the roof

on the Manufactured Home in September of 2020 for $6,500.00.

---

[3]     The Court notes that this error, which resulted in the inclusion of additional square footage of the
Manufactured Home, would appear to have caused Mr. Cobia to overestimate the value of the Manufactured Home.

**B. Vanderbilt's Appraiser**

Vanderbilt presented Mr. Banks as its expert witness, who has worked as an appraiser since 1968. Mr. Banks utilized the National Appraisal Guide Worksheet to reach his conclusion that the value of Manufactured Home is $30,700. Specifically, he began his analysis with the NADA retail value of the Manufactured Home of $25,776.70. He then applied a condition adjustment depending on whether the property's condition is considered excellent, good, fair or poor. His appraisal report defines these conditions as follows:

> Excellent: Home is new, or like new, very attractive and highly desirable.
>
> Good: Normal wear and tear is visible, but home is well maintained, still attractive, desirable and useful.
>
> Fair: Minor deterioration apparent due to both the climate and the deferred maintenance, less attractive but obviously useful.
>
> Poor: Signs of structural deterioration, obvious missing or broken component items, definitely undesirable and marginally useful.

Mr. Banks utilized a "good" condition factor for the Manufactured Home, which resulted in the application of a 95% factor to the NADA retail value ($24,500).[4] Thereafter, Mr. Banks deducted the necessary repairs, including any missing appliances and components from this value. Mr. Banks estimated that the Manufactured Home need $1,150 in repairs for repairing the ceiling and bathroom skylight ($775), pressure washing the outside siding ($125) and repairing the window casing throughout the house ($250). Mr. Banks then calculated the additional value provided by the Manufactured Home's components and accessories. With the exception of the new roof that Debtor recently added, Mr. Banks used the value based on "5+ Years" of use for these items. Mr. Banks concluded that the Manufactured Home's components are valued at $6,075 and the accessories are valued at $1,293. Using these figures, Mr. Banks reached his valuation as follows:

---

[4]    Mr. Banks' rounded to the nearest $100 for completing this condition adjustment calculation.

| | |
|---|---|
| Base Value, as adjusted: | $24,500 |
| Components Value: | $6,075 |
| Accessories Value: | $1,293 |
| Less Repairs: | ($1,150) |
| **Total Value:** | **$30,700 (rounded to the nearest hundred $)** |

Debtor challenged the accuracy of Mr. Banks' valuation, noting that he missed certain

broken components of the Manufactured Home and misstated the condition of the property. The

Court notes that while Mr. Banks testified that he conducts appraisals for debtors, Mr. Banks has

appeared in multiple matters before this Court for Vanderbilt and similarly situated creditors. It is

clear that a majority of his work is assisting with valuations for consumer creditors.

Also, the Court has observed that many courts, including multiple judges from this District,

have found Mr. Banks' appraisals to overestimate the value of the appraised property. *See In re*

*Blackwell*, C/A No. 2:17-bk-20203, 2018 WL 1189257, at *3 (Bankr. S.D. W.Va. Mar. 5, 2018)

(finding the value of a manufactured home was $5,000, the value asserted by the debtor's appraiser

and rejecting Mr. Bank' conclusion of value ($16,800)); *In re Tudor*, C/A No. 2:15-20637, 2016

WL 5485183, at *4 (Bankr. S.D. W.Va. Sept. 29, 2016) (finding the value of a manufactured home

was $32,500 when Mr. Banks concluded the value was $50,100); *In re Brown*, 560 B.R. 188, 195

(Bankr. E.D.N.C. 2016) (finding the manufactured home was valued at $45,552.00 when Mr.

Banks testified that the value was $50,200); *In re Eaddy*, C/A No. 15-05744-DD, 2016 WL

745277, at *1-2 (Bankr. D.S.C. Feb. 23, 2016) (Judge Duncan of this District found the value of a

manufactured home was $29,595 when Mr. Banks testified to the value of $38,500); *In re Govan*,

C/A No. 16-00056-DD, 2016 WL 3027058, at *5-6 (Bankr. D.S.C. May 17, 2016) (Judge Duncan

found the value of the manufactured home was $37,000 when Mr. Banks testified to a value of

$44,600); *In re Cochran*, C/A No. 15-02304-jw, slip op. at 4 (Bankr. D.S.C. Oct. 1, 2015) (the

undersigned found the value of the manufactured home was $33,000 when Mr. Banks testified to

a value of $40,000). This pattern causes the Court to question the credibility of the values included

in Mr. Banks' appraisal.

### C. The Court's Analysis of Value

In reviewing the methodology of both appraisers, the Court finds, in this particular case,

the National Appraisal Guide Worksheet to be a more appropriate method of determining the value

of the Manufactured Home as it provides for inclusion of the NADA book value as well as

adjustments for the specific features and conditions unique to the manufactured home. Under the

National Appraisal Guide Worksheet method, the value is determined by using the base value of

the manufactured home, adjusted for its condition, and adding the value of any components and

accessories included in the manufactured home with a deduction for any necessary repairs to the

property. The Court finds Mr. Cobia's estimated value of the Manufactured Home to be credible,

especially considering his experience as well as his focus and knowledge on coastal properties in

South Carolina and Georgia, but the Court also finds his reliance on only the NADA report to be

less specific than a more detailed approach to valuation. While the National Appraisal Guide

Worksheet was the method used by Mr. Banks, the Court doubts the condition and values used by

Mr. Banks in his appraisal. Therefore, the Court will consider each component of the National

Appraisal Guide Worksheet individually to determine the value of the Manufactured Home.

### 1. Condition of Property

First, Mr. Banks reduced the NADA base value of the Manufactured Home ($25,776.70)

by a 95% factor as Mr. Banks asserted the Manufactured Home is in "good" condition, which he

defines as "[n]ormal wear and tear is visible, but home is well maintained, still attractive, desirable

and useful." Based upon a review of the pictures of the Manufactured Home attached to both

appraisals and the descriptions of its condition from Debtor and her appraiser, the Court finds the

condition of the Manufactured Home is no better than "fair" condition, which Mr. Banks defines as "[m]inor deterioration apparent due to both the climate and the deferred maintenance, less attractive but obviously useful." It clear that maintenance of the Manufactured Home has been deferred as evidenced by the numerous issues to the house, including broken and missing components as well as stained walls, fixtures, and carpets. Further, the Manufactured Home's deterioration is also the result of climate due to long-term water intrusion from the prior roof.  The Court also finds Debtor's testimony that mold is present in the Manufactured Home to be credible. Debtor appeared honest and forthright when she testified that she routinely cleans the mold when it appears and that it tends to be worse during the humid summer months, which may explain why the appraisers did not observe mold issues during their inspections. Considering both appraisers testified that it is evident the Manufactured Home had a significant roofing leak and that there is clear water damage to the ceiling of the Manufactured Home, it is likely that the Manufactured Home has issues with mold. Due to the health risk involved, unaddressed mold issues significantly reduce the desirability, usability, and marketability of a manufactured home, thus reducing its value. Therefore, the Court finds the condition of the home appears to be more appropriately in "poor" condition ("definitely undesirable and marginally useful"). Based upon the evidence presented, the Court finds a factor of 70%, a factor used for manufactured homes in "poor" condition, should be applied to the NADA base value of the Manufactured Home ($18,043.69).

## 2. Estimate of Repairs Needed

The National Appraisal Guide Worksheet next reviews the estimated repairs needed for the subject manufactured home. In the present matter, Mr. Banks estimated that the Manufactured Home needed the following repairs to make it marketable:

| | |
|---|---|
| Pressure Wash the Exterior: | $125.00 |
| Repair Ceiling: | $175.00 |

9

| | |
|---|---|
| Repair Window Casing Throughout Home: | $250.00 |
| Repair Skylight and Ceiling Repair: | $600.00 |
| **Total Repairs Needed:** | **$1,150.00** |

Based upon the Court's own knowledge, it appears that Mr. Banks underestimates the costs necessary to complete the repairs. Beyond his opinion of the costs of the repairs, Mr. Banks provided no construction quotes or other evidence to support his repair estimates. A review of the pictures of the Manufactured Home show the damages to the ceiling and window casings is considerable, and the Court finds Mr. Banks' repair estimates to be unreasonable. The Court also notes that Mr. Banks' estimates do not include certain broken components of the house, including the broken kitchen faucet, and therefore, appear to not accurately reflect the cost of the necessary repairs.

In addition, the location of Debtor's property also contributes to the cost of repairs. The Manufactured Home is located in Yemassee, South Carolina, a small town of approximately 1,000 people. Debtor testified that there are limited options for repair people to serve Yemassee, which results in higher costs to complete repairs. It does not appear Mr. Banks factored in the higher repair costs for the area. For example, Debtor recently paid $6,500 to replace the roof to her Manufactured Home; whereas, Mr. Banks estimated a roof replacement for the Manufactured Home would be approximately $4,000 to $5,000.

Taking these items into consideration, the Court finds the necessary repairs for the Manufactured Home is more appropriately estimated at $2,500.00 when factoring the higher costs for repairs in Yemasee due to the lack of available contractors and the broken items not included in Mr. Banks' appraisal.

10

### 3. Estimates of the Manufactured Home's Components and Accessories

The National Appraisal Guide Worksheet method concludes by reviewing the condition of the particular components and accessories of the manufactured home being appraised to determine any additional value added by these items. In the present matter, with the exception of the new roof which Debtor installed last year, Mr. Banks applied a "5+ Years" value for all components and accessories in the Manufactured Home, including the appliances and HVAC unit. Mr. Banks estimates that the total additional value of the components is $6,075 and $1,293 for the accessories.

As an initial observation, the Manufactured Home is outdated and appears to be unchanged from 2004 when it was purchased. The appliances, siding, bathroom fixtures, fireplace, storm door, skirting, deck, and HVAC unit do not appear to have been replaced since the Manufactured Home was first manufactured in 2000. Considering these items have now been in use for 21 years, the Court finds these items have marginal, if any, value. Further, the Court finds the approach utilized by Mr. Banks to not be convincing as he applied only a general "five years and older" value for all of the components and accessories, especially considering these items in the Manufactured Home are considerably older than five years. There is significant difference in the in the value of an HVAC unit or refrigerator from 2015 as compared to similar items from 2000. Further, a review of the photographs of the Manufactured Home show the condition of these items to be poor. As a result, the Court finds Mr. Banks has overestimated the value of these components and accessories. Further, it appears Mr. Banks included a washing machine in his estimate; however, it does not appear that one is located in the Manufactured Home. This also suggests an overestimation of the value of these items. Therefore, to better reflect the value of these components and accessories, the Court finds a one-third factor should be applied to Mr. Banks' estimates for these items.

Specifically, the Court finds the additional value of the components to be $2,025.00 and the additional value of the accessories to be $424.35.

### 4. Total Calculation of the Value of the Manufactured Home

Based on these foregoing findings, the Court concludes the Manufactured Home is valued as follows for the purposes of confirmation:

| | |
|---|---|
| NADA Base Value: | $25,776.70 |
| Less Condition Adjustment (70%): | ($7,733.01) |
| Less Necessary Repairs: | ($2,500.00) |
| Components Value: | $2,025.00 |
| Accessories Value: | $424.35 |
| **TOTAL VALUE:** | **$17,993.04** |

The Court's determination of the value of the Manufactured Home appears to be similarly close to the valuation testified to by Debtor's expert, Mr. Cobia ($17,000).

Debtor's Plan values Vanderbilt's secured claim at $14,500.00. As such, the plan as presently filed does not meet the requirements of confirmation, and therefore confirmation of the Plan as proposed is denied. Debtor shall have 10 days from the date of the entry of this Order to propose and file a modified plan that provides for a valuation of Vanderbilt's claim at $17,993.04.

### CONCLUSION

For the foregoing reasons, the Court finds for the purposes of confirmation that the value of the Manufactured Home is $17,993.04. Confirmation of Debtor's Plan as proposed is denied and Debtor shall have ten (10) days from the date of the entry of this Order to propose and file a modified plan in accordance with the findings of this Order.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
February 19, 2021